# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**LM INSURANCE CORPORATION**　　　　　　　　　**CIVIL ACTION**

**VERSUS**

**　　　　　　　　　　　　　　　　　　　　　　　　NO. 17-20-BAJ-RLB**

**SCOTT FOLSE, ET AL.**

## ORDER

Before the Court is LM Insurance Corporation and Liberty Mutual Fire Insurance Company's (collectively, "Liberty") Motion to Compel DMI to Produce Settlement Agreement and Related Documents (R. Doc. 18) filed on July 5, 2017. The motion is opposed. (R. Doc. 25). Liberty has filed a Reply. (R. Doc. 29).

Also before the Court is Hymel Davis & Peterson L.L.C.'s ("Hymel") Motion to Quash Subpoena to Hymel Davis & Peterson L.L.C. or for Protective Order (R. Doc. 21) filed on July 13, 2017. The motion is opposed. (R. Doc. 24). DMI has filed a memorandum in support of the Motion. (R. Doc. 25).

Because the foregoing motions concern the same documents sought in discovery, the Court considers them together.

## I. Background and Procedural History

Liberty brings this action for declaratory relief against defendants Scott Folse, DMI Contractors, Inc., and DMI Pipe Fabricators, L.L.C. (collectively, "DMI") arising from DMI's claim for reimbursement for a settlement of claims asserted against them in the underlying lawsuits of *Powko Industries, L.L.C. v. Folse, et al.*, M.D. La. No. 3:15-cv-388-BAJ-SCR ("the Federal Lawsuit") and *Powko Industries, L.L.C. v. DMI Contractors, Inc. and DMI Pipe*

*Fabrication, L.L.C.*, 19th Judicial District Court No. 629238 ("the State Lawsuit"). (R. Doc. 1; R. Doc. 16 "Am. Compl.").

Liberty seeks declaratory relief regarding its obligations under four consecutive Commercial General Liability and Umbrella Excess Liability policies issued to DMI Contractors, effective for one-year terms from October 30, 2009 to October 30, 2013, and to which DMI Pipe was subsequently added as an additional named insured (the "Policies"). (Am. Compl. ¶¶ 7, 15).

Liberty alleges that on or about October 30, 2015, Powko Industries, L.L.C., which was represented by Hymel in the underlying litigation, settled its claims in the State and Federal Lawsuits in exchange for payment of $1.5 million. (Am. Compl. ¶ 40). DMI denies that allegation, asserting that "Powko agreed to general terms of a settlement with [DMI] on November 2, 2015, [but] the terms of that settlement continued to be negotiated up to December 8, 2015 when formal settlement documents were executed." (R. Doc. 17 at 8). DMI's initial disclosures in this action provide that pursuant to certain settlement documents, DMI paid Powko the amount of "$1,500,000 together with attorneys fees" incurred in the underlying State and Federal Lawsuit. (R. Doc. 18-2 at 6). DMI further asserts in its initial disclosures that it had in its possession, custody or control the "Settlement Documents executed on December 8, 2015," which "support its defenses and/or claims in this matter." (R. Doc. 18-2 at 6).

On November 15, 2015, Liberty informed DMI that it was denying coverage for the settlement to the extent the settled claims in the Federal Lawsuit were not covered by the Policies, and that it was denying coverage for the settled claims in the State Lawsuit because DMI had never tendered the State Lawsuit for coverage. (Am. Compl. ¶ 41; R. Doc. 17, "Am. Ans.," ¶ 41).

On January 11, 2017, Liberty removed the State Lawsuit on the basis that DMI filed a Third Party Demand against Liberty, conferring diversity jurisdiction over the action. *See Powko Industries, L.L.C. v. DMI Contractors, Inc. et al.*, No. 17-cv-19-BAJ-EWD (M.D. La.). That same day, Liberty filed the instant action for declaratory relief. (R. Doc. 1). The Court remanded the State Lawsuit on the basis that DMI did not obtain leave of court to file the Third Party Demand. *See Powko Industries*, No. 17-cv-19, ECF Nos. 19, 20.

On July 17, 2017, Liberty again removed the State Lawsuit, this time on the basis that the State Court judge signed an order permitting DMI to file the Third Party Demand against Liberty. *See Powko Industries, L.L.C. v. DMI Contractors, Inc. et al.*, No. 17-cv-458-BAJ-RLB (M.D. La.).[1] In the Third Party Demand, DMI asserts that in accordance with its agreement to defend the Defendants in the Federal Lawsuit pursuant to a reservation of rights, Liberty assigned the defense to the attorney Richard G. Duplantier, Jr. ("Duplantier"). (R. Doc. 18-2 at 2). DMI further asserts that a mediation was conducted on October 23, 2015, and that through Duplantier, Liberty refused to contribute to the settlement or pay any expenses of the mediator. (R. Doc. 18-2 at 2). DMI further asserts that on November 2, 2015, all of the parties, with the exception of Liberty, agreed to a settlement framework. (R. Doc. 18-2 at 2). DMI seeks recovery from Liberty for alleged bad faith breach of the duty to defend and settle the claims in the State Lawsuit. (R. Doc. 18-2 at 3-4).

In the instant action, Liberty seeks declarations (1) that it does not owe a duty to DMI in the State Lawsuit under the Policies; (2) that the Policies do not cover the $1.5 million settlement with regard to either the State Lawsuit or Federal Lawsuit, and that Liberty has no duty to

---

[1] On August 8, 2017, DMI filed a motion to remand the State Lawsuit a second time. *See Powko Industries, L.L.C.*, No. 17-cv-458, ECF. No. 7.

indemnify DMI for the settlement; and (3) that DMI's bad faith claims against Liberty are prescribed. (R. Doc. 16 at 14-18).

On June 26, 2017, Liberty served Hymel, a non-party to this action, with a subpoena for documents seeking production in New Orleans, Louisiana, by July 14, 2017. (R. Doc. 21-2 at 1). The subpoena seeks documents reflecting Hymel's communications with DMI, Chad Rousse (another defendant in the underlying lawsuits), and their attorneys (L. Loren Kleinpeter, James R. Chastain, Jr., and Richard Duplantier) concerning the claims asserted in the State Lawsuit and/or Federal Lawsuit; the settlement of the State Lawsuit and/or Federal Lawsuit; coverage for the claims asserted in the lawsuits or settlement of the lawsuits; a copy of the memorandum of settlement agreement; the final executed settlement agreement; all documents reflecting any payment to Powko in connection with the settlement; and all documents reflecting communications between Hymel and DMI and/or Ms. Kleinpeter concerning the Third Party Demand and the instant declaratory judgment action. (R. Doc. 21-2 at 3-4). Liberty specifically states in the subpoena that it is not seeking the production of "any documents subject to the attorney-client privilege or the work product doctrine." (R. Doc. 21-2 at 3-4).

On June 28, 2017, DMI provided responses to Liberty's First Set of Requests for Admission, Interrogatories and Request for Production of Documents propounded in the instant action. (R. Doc. 18-2 at 8-23).[2] Liberty's Request for Production No. 1 seeks production of the final executed settlement agreement between DMI and Powko. (R. Doc. 18-2 at 18). Liberty's Request for Production No. 6 seeks production of all documents related to the payments by DMI to Powko in connection with the settlement. (R. Doc. 18-2 at 19). DMI objected to the foregoing requests for production on the basis that they did not seek relevant information. (R. Doc. 18-2 at

---

[2] The parties do not identify when these discovery requests were propounded.

18, 20). Liberty now seeks an order compelling DMI to produce the settlement agreement and the documents reflecting the payment of the settlement, as sought through Requests for Production Nos. 1 and 6, as well as recovery of its reasonable expenses for bringing the instant motion. (R. Doc. 18).

Hymel seeks an order quashing the subpoena served by Liberty. (R. Doc. 21). Hymel represents that the "settlement agreement contains a confidentiality provision, requiring Powko to keep the terms and conditions of the agreement confidential" and disclosure of "[d]ocuments reflecting sums paid would obviously partially disclose the terms of the settlement agreement." (R. Doc. 21-1 at 2). Hymel is concerned that it will breach the confidentiality provision of the settlement agreement if it produces the requested documents absent a court order. (R. Doc. 21-2 at 3). Furthermore, Hymel represents that "most if not all of the documents may be obtained from parties to the instant lawsuit, rather than [Hymel]." (R. Doc. 21-2 at 3). Hymel does not argue that the documents sought are not relevant to the instant lawsuit or otherwise fall outside of the general scope of discovery.

In opposition to Liberty's motion, and in support of Hymel's motion, DMI argues that the settlement agreement and related documents sought by Liberty are not relevant to any party's claim or defense in this lawsuit because (1) DMI has not asserted a counterclaim against Liberty in this lawsuit and (2) DMI's Third Party Demand filed in the State Lawsuit (now pending in federal court) is not a pleading in this lawsuit. (R. Doc. 25 at 3-4). DMI further argues that for the Court to adjudicate Liberty's claims for declaratory relief in this lawsuit, "it does not matter if the Powko claims have been settled or not, nor if settled, for what sum." (R. Doc. 25 at 4).

## II. Law and Analysis

### A. Liberty's Motion to Compel

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

The requests for production and responses at issue are as follows:

**Request for Production No. 1**
The final executed settlement agreement between [DMI] and Powko Industries, Inc.

**Response to Request for Production No. 1**
Respondents object to the information requested in this Request for Production. No counter claim or other claim has been made by Respondents against [Liberty] in this litigation for damages. The document sought to be produced in this Request for Production has no relevance to any matter at issue in this litigation, nor is it likely to lead to the discovery of any materials relevant to the issue of insurance coverage which is the subject of [Liberty's] declaratory judgment action.

**Request for Production No. 6**
All documents related to any payment by you of any amount to Powko Industries, LLC or its members in connection with the settlement of the State and Federal Lawsuits.

**Response to Request for Production No. 6**
Respondents object to the information requested in this Request for Production. No counter claim or other claim has been made by Respondents against [Liberty] in this litigation for damages. The documents sought to be produced in this Request for Production have no relevance to any matter at issue in this litigation, nor is it likely to lead to the discovery of any materials relevant to the issue of insurance coverage which is the subject of [Liberty's] declaratory judgment action.

(R. Doc. 18-2 at 18-20).

Having reviewed the pleadings in this action, the Court concludes that the information sought – the settlement agreement for the claims in the underlying litigation and documents regarding payments made under that settlement agreement – are relevant to Liberty's claims in this lawsuit and otherwise fall within the scope of discovery.[3]

Liberty seeks declarations (1) that it does not owe a duty to DMI in the State Lawsuit under the Policies; (2) that the Policies do not cover the $1.5 million settlement with regard to

---

[3] The Court makes no finding regarding the extent to which any additional documents sought by Liberty through third-party discovery, or through discovery requests other than Request for Productions Nos. 1 and 6, fall within the scope of discovery.

either the State Lawsuit or Federal Lawsuit, and that Liberty has no duty to indemnify DMI for the settlement; and (3) that DMI's bad faith claims against Liberty are prescribed. (R. Doc. 16 at 14-18). Liberty specifically asserts that the Policies "do not cover the parties' $1.5 million settlement of the claims asserted in the State and Federal Lawsuits for several reasons," including that the settled claims were not for "damages because of 'personal and advertising injury'" as defined in the Policies; certain entities covered in the settlement are not insured by the Policies; several exclusions bar coverage for the parties' settlement; and the settlement may not be covered to the extent it resolved claims for punitive, exemplary, or treble damages. (Am. Compl. ¶¶ 51-55). Liberty's claims are not limited to an abstract determination regarding whether it had a duty to defend, indemnify, and/or settle with regard to the underlying State Lawsuit and Federal Lawsuit. Liberty specifically challenges whether it has any duties with regard to the settlement agreement actually entered by the parties to the underlying lawsuits. That settlement agreement and the related documents sought from DMI are relevant to Liberty's claims in this lawsuit.

Indeed, in its initial disclosures in this action, DMI disclosed the amount of the underlying settlement and provides that it has in its possession, custody or control the "Settlement Documents executed on December 8, 2015," which "support its defenses and/or claims in this matter." (R. Doc. 18-2 at 6). While DMI may have intended for that disclosure to be limited to the removed State Lawsuit, the disclosure was properly made in this action because the Settlement Agreement and related documents are relevant to Liberty's claims.

Based on the foregoing, the Court will require DMI to produce the documents requested. Given the purported confidential nature of the documents, however, the Court will require the parties to meet and confer for the purpose of filing a motion for leave for entry of a protective

order governing confidential information to be exchanged in this lawsuit, including the documents at issue in this Order, prior to the exchange of additional documents in this action.

The Court will deny Liberty's motion in part as it seeks an order requiring production without the presence of an appropriate protective order governing the exchange of confidential information. Where the Court denies a motion to compel in part, it Court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). Having considered the record as a whole, and the relief provided by the instant Order, the Court concludes that the parties must bear their own costs related to the instant motion.

### B. Hymel's Motion to Quash or for Protective Order

Rule 45 governs the issuance of subpoenas to obtain discovery from non-parties. The party issuing the subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). On timely motion, the court must quash or modify a subpoena if it requires disclosure of privileged or other protected matter, or otherwise subjects the subpoenaed person to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). The moving party has the burden of demonstrating that compliance with the subpoena would be unduly burdensome. *See Wiwa v. Royal Dutch Petroleum Co*., 392 F.3d 812, 818 (5th Cir. 2004).

Rule 45 further provides "the court for the district where compliance is required" the authority to quash or modify a subpoena. Fed. R. Civ. P. 45(d)(3)(A); *see also* Fed. R. Civ. P. 45(g) ("The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it."). Because compliance

for the subpoena is sought in New Orleans, the U.S. District Court for the Eastern District of Louisiana is the appropriate court to seek relief pursuant to Rule 45. Of course, any subpoena-related motion in the Eastern District could ultimately be transferred to the Middle District, which is the court where the action is pending, particularly if the person subject to the subpoena consents. *See* Fed. R. Civ. P. 45(f).

While the relief sought pursuant to Rule 45 is not appropriately before this Court, the Court will consider the motion on the merits because it seeks a protective order pursuant to Rule 26(c)(1). Rule 26(c)(1) provides that "any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The relief sought by Hymel pursuant to Rule 26(c)(1) is properly before this Court.

As discussed above, the Court will require DMI to produce documents responsive to Liberty's Request for Production Nos. 1 and 6. It appears that the production of documents by DMI will obviate the need for any documents regarding the settlement of the underlying actions to be produced by Hymel or any other non-party law firm. Accordingly, to prevent undue burden or expense to Hymel, the Court finds it appropriate to issue a protective order providing that Hymel need not provide any documents responsive to the subpoena at issue. If, however, after the production of documents by DMI, Liberty can make the proper showing that additional documents within the scope of discovery are not in DMI's possession, custody, or control, but are in Hymel's possession, custody, or control, then nothing in this Order shall preclude Liberty from issuing a second subpoena seeking such documents from Hymel.

### III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that Liberty's Motion to Compel (R. Doc. 18) is **GRANTED in part and DENIED in part.** The parties shall meet-and-confer within **7 days** of the date of this Order regarding the entry of a non-sharing confidentiality agreement and/or a motion for leave for entry of a protective order regarding the information to be produced in response to Request for Production Nos. 1 and 6. DMI shall produce all documents in its possession, custody, or control responsive to Request for Production Nos. 1 and 6 within **7 days** of execution of the entry of a protective order by the Court governing the exchange of confidential information in this action.

**IT IS ORDERED** that Hymel's Motion to Quash or for Protective Order (R. Doc. 21) is **GRANTED** to the extent it seeks a protective order quashing the subpoena issued by Liberty. The subpoena (R. Doc. 21-2) is quashed.

Signed in Baton Rouge, Louisiana, on August 23, 2017.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**